O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | | Not Reported | |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**      IN CHAMBERS (No Proceedings Held)

Plaintiff Orica Explosives Technology, Pty., Ltd. ("Orica") holds patents related to electronic blasting systems used in mining and construction. Orica alleges that Defendants Austin Powder Company ("Austin"), Lectronics LLC ("Lectronics"), Dan-Mar Company, Inc. ("Dan-Mar"), and Special Devices Inc. ("SDI") (collectively, "Defendants") have infringed two of its patents: U.S. Patent Nos. 5,894,103 ("the '103 patent") and 6,644,202 ("the '202 patent"). This Order addresses the '202 patent. On February 1, 2010, the Court held a hearing on Plaintiff's Motion for Summary Judgment as to Infringement of Patent No. '202 and Defendants' corresponding cross-motion seeking a declaration of non-infringement.[1] Having considered the papers and the oral arguments, the Court DENIES Plaintiff's Motion and GRANTS Defendants' Motion.

## I.    BACKGROUND

Multi-shock blasting, which is often used in large-scale commercial mining and blasting operations, involves arranging multiple (often hundreds) of detonators in a blasting field and programming them to fire at carefully controlled and coordinated times.[2] Although a single "fire" command is sent to initiate the blast, each detonator in the field has its own particular "delay time." After receiving the "fire" command, each

---

[1] The Court has treated Plaintiff's Motion and Defendants' cross-motion as a single motion for purposes of its analysis and ruling.

[2] This background comes from Orica's '103 and '202 Patents.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

detonator waits its "delay time" before firing, causing the detonators to go off in a precisely timed sequence or pattern.

There are a number of ways to implement different "delay times" for multi-shock blasting arrangements. The '202 patent describes one such way. It provides a method of establishing a blasting arrangement whereby the operator is able to use a "logger" (*i.e.*, a device for creating a log that is used to program the delay time and detonator number of each detonator) to automatically increment delay times, rather than having to manually assign individual delay times to each detonator.

The "control unit" or "logger" that the '202 patent claims is designed to eliminate two inefficiencies in setting up blasts. The first inefficiency that the '202 patent seeks to address is the need to manually type the delay time of each detonator on a logger keypad. SUF ¶ 13; Defendants' SUF ¶ 2.[3] This inefficiency is addressed in claim 14, which describes a "control unit" that stores a "time interval" by which detonator delay times are adjusted upward or downward. SUF ¶ 13; Defendants' SUF ¶ 4. Orica accuses one logger made by Defendant Dan-Mar—the Dash-100 with auto-increment capabilities (the "Dash-100 Auto Increment" or "Dash-100 AI")—of infringing claim 14 of the '202 patent.[4] Defendant Austin Powder's Electro*Star System and Lectronics' Accudent

---

[3] Unless otherwise noted, citations in this Order refer to documents submitted in support of or opposition to Orica's Motion for Partial Summary Judgment. In contrast, "Defendants' SUF," for example, refers to Defendants' Statement of Uncontroverted Facts submitted in support of their Motion for Summary Judgment, and "Orica's SGI" refers to Orica's Statement of Genuine Issues submitted in support of their Opposition to Defendants' Motion for Summary Judgment.

[4] Defendants devote a substantial portion of their Motion to arguing that two other types of their Dash-100 loggers (the "Standard" and "EBR") do not infringe claim 14 of the '202 patent. Orica, in its Opposition, states that it does not accuse the Dash-100 Standard or the Dash-100 EBR of infringing claim 14. Orica's Opp'n at 2. Accordingly,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

System include the accused Dan-Mar logger.  SUF ¶¶ 10-11.  Defendant SDI designed the Electro*Star and Accudent blasting systems.  *Id*. ¶¶ 6-7.

The second inefficiency that the '202 patent seeks to address is the need to travel from hole to hole to individually connect each detonator to a logger to program detonator delay times.  SUF ¶ 74; Defendants' SUF ¶ 3.  This inefficiency is addressed in claim 17.  SUF ¶ 74; Defendants' SUF ¶ 7.  Orica accuses three of Defendants' loggers—the Dash-100 Standard, Dash-100 EBR, and Dash-100 AI—of infringing claim 17 of the '202 patent.

On September 10, 2009 this Court ruled that claim 17 of the '202 patent was anticipated by prior art and therefore invalid.  Accordingly, the only issue left to be resolved by this motion is whether the Dash-100 AI infringes claim 14 of the '202 patent.

## II.    PROCEDURAL HISTORY

On October 27, 2006, Orica filed this action in the District Court for the Eastern District of Texas, and on May 22, 2007, the case was transferred to this Court.   In October 2008, Orica and Defendants each filed four cross-motions for summary judgment relating to (1) the validity of the '103 and '202 patents, (2) infringement of the '103 patent, (3) infringement of the '202 patent, and (4) liability for infringement of the '103 and '202 patents.  *See* Docket Nos. 127-129; 132-134; 177.  On October 28, 2008, the Court suggested that it would be most efficient to first adjudicate the motions relating to the validity of the '103 and '202 patents.  In their November 3, 2008 Joint Response, the parties agreed.  In the Response, Orica stated that resolution of the "[invalidity] motion (one way or the other) is very likely to spur settlement."  Defendants, too, agreed that resolution of the invalidity issue may facilitate settlement, and requested that the Court provide a "period for the parties to pursue another round of mediation, which may

---

this Order addresses whether claim 14 is infringed by Defendants' Dash-100 AI logger only.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

be more productive in resolving the issues than requiring the parties to engage in litigation activities or the Court to rule on all the pending summary adjudication motions."

From December 22, 2008 until August 11, 2009, this case was stayed due to proceedings in the Bankruptcy Court. On August 31, 2009, the Court held a hearing on Defendants' Motion for Summary Judgment of the Invalidity of Patents '103 and '202. In a September 10, 2009 Order, the Court ruled that Defendants failed to demonstrate the invalidity of the '103 patent, but that they put forth clear and convincing evidence that claim 17 of the '202 patent is invalid. In light of the parties' prior representation that the resolution of the invalidity issue would be conducive to further settlement efforts, the Court ordered the parties to resume settlement efforts and to submit a joint status report on the outcome of those discussions.

On October 1, 2009, the parties filed a joint status report in which they stated that they were unable to reach a final agreement during mediation but indicated that they would continue to attempt to resolve their differences. They also stated that resolution of the pending infringement summary judgment motions may assist them in preparing for trial and would possibly promote further settlement discussions.

## III.   LEGAL STANDARDS ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

The foregoing principles relating to summary judgment motions are applicable to patent cases. "Thus, a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact." *Avia Group, Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). Where a patentee claiming infringement fails to submit evidence rebutting defendant's evidence of non-infringement, the patentee is not entitled to judgment. *Grain Processing Corp. v. American Maize-Prods. Co.*, 840 F.2d 902, 910 (Fed. Cir. 1988).

## IV.   DISCUSSION

As explained above, the '202 patent describes a method of and apparatus for establishing a multi-shock blasting arrangement. Claim 14 of the '202 patent—the claim that Orica accuses Dan Mar's Dash-100 AI logger of infringing—describes a "control unit" with an auto-incrementing function that enables the operator to program a time interval and assign delay times using that time interval. Claim '14 of the '202 patent reads:

> A control unit for use in a blasting system which includes a plurality of individually identifiable detonators, the control unit having a power source that is incapable of firing the detonators, and further including memory means for storing at least one time interval, means for adjusting the time interval, means for displaying a time delay period, means for varying the displayed time period at least by steps with each step corresponding to the stored time interval, thereby to achieve a desired time delay period, and means for associating the desired time delay period with a selected detonator wherein the control unit is capable of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

receiving identity data from each detonator and of storing the identity data from each detonator and of storing the identity data and the respective time delay period associated with each of the plurality of detonators in the memory means for subsequent transfer to the detonators.

'202 Patent col. 8:53-67.

The parties agree that the term "control unit" means "a device capable of communication with detonators but whose power source is incapable of firing the detonators." SUF ¶ 15. This "control unit" is also referred to as a "logger," which is used to program the delay time and detonator number of each detonator. *Id*. ¶ 27.

The parties agree that claim 14 includes two distinct claim limitations: (1) a "time interval," which means "an amount of time by which a time delay period may be adjusted upward or downward," and (2) a "time delay period" which refers to the amount of time a detonator waits to detonate after receiving the fire command. Defendants' SUF ¶¶ 10-11.

The parties dispute the presence of only one element of claim 14 of the '202 patent in Dan-Mar's Dash-100 AI logger: the "means for varying the displayed time delay period at least by steps with each step corresponding to the stored time interval, thereby to achieve a desired time delay period." SUF ¶ 56.[5] The parties agree that this element describes a "means-plus-function" limitation. *Id*.

---

[5] Defendants assert that this is not the only dispute to the "extent [it] suggests Orica is not required to meet its burden of proof with respect to all limitations of the claim." However, at least for purposes of these motions, Defendants do not dispute the presence of any other elements of claim 14 in the Dash-100 AI logger. *See* Orica's Motion at 11; Defendants' Opp'n. at 1-2, 9.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

In a means-plus-function limitation, the patent describes the means for performing a particular function, rather than describing the particular structure that performs the function.[6] When, as here, a limitation is expressed in "means plus function" language and does not "recite definite structure in support of its function, it is subject to the requirements of 35 U.S.C. § 112, ¶ 6 (1994)." *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). This statute mandates that such a claim limitation "be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." § 112, ¶ 6.

"[F]or a means-plus function limitation to read [literally] on an accused device, the accused device must employ means identical to or the equivalent of the structures, material, or acts described in the patent specification. The accused device must also perform the identical function as specified in the claims." *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993). *See also Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.3d 931 (Fed. Cir. 1987) ("To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure* and must find equivalent *structure* as well as *identity* of the claimed *function* for that structure."). "In construing a means-plus-function limitation, a court must identify both the claimed function and the corresponding structure in the written description for performing that function." *Northrop Grumman Corp v. Intel Corp.*, 325 F. 3d 1346, 1350 (Fed. Cir. 2003). *See also Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001) ("The first step in construing such a limitation is a determination of the function of the means-plus-function limitation. The next step is to determine the corresponding structure described in the specification and equivalents thereof.") (internal citations omitted).

---

[6] This "layman's explanation" comes from the Patent Litigation Model Jury Instructions drafted by the American Bar Association Litigation Section, ¶ 6.4.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

There is no dispute that the claimed function is "varying the displayed time delay period at least by steps with each step corresponding to the stored time interval." SUF ¶¶ 55, 57. The parties dispute whether the corresponding structure that the '202 patent discloses as providing the means for performing this function is the keypad (as a whole) or merely the increment/decrement keys on the keypad. The parties also dispute whether Dan-Mar's Dash 100-AI logger includes the structural equivalent of increment/decrement keys. These are the central issues to be resolved by this ruling.

### A. The structure corresponding to the claimed function is a keypad with increment and decrement keys

As noted above, 35 U.S.C. § 112 ¶ 6 requires a means-plus-function claim limitation to "be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." § 112, ¶ 6. "[P]ursuant to this provision, [the] structure disclosed in the specification is [the] 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6." *B. Braun* at 1424. Accordingly, the Court "must turn to the written description of the patent to find the structure that corresponds to the means recited" in the allegedly infringed limitation. *Id. See also Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1428 (Fed. Cir. 1997) (instructing courts to "consult the specification to define the structure, material or acts corresponding to [the] claimed function.").

Defendants argue that the disclosed structure for performing the claimed function is "increment and decrement keys" and its structural equivalents. SGI ¶ 60. Orica disputes this, and argues that the disclosed structure for performing the claimed function is a "control unit" with the ability to vary time delay periods through the manipulation of a keypad, and not merely the keypad's "increment and decrement keys." *Id.*

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

Orica, in support of its construction, points to the part of the description of the preferred embodiments that states:

> The control unit and the memory module are shown in block diagram form in FIG. 2. The control unit includes a keypad 40 . . . The keypad 40 is manipulated, according to requirement, using a stored time delay period from the memory unit 44, to generate a predetermined or desired time delay period which is then assigned to the detonator in question. . . .

'202 Patent at col. 4:3-7; col. 5:7-9.[7] Orica asserts that this preferred embodiment "describes an interaction between the keypad and the associated circuitry to achieve the desired delay time." SGI ¶ 60.

Defendants, in support of their construction, point to a different part of the description of the preferred embodiments in the '202 patent. They point to language in the patent that appears to refer to Figure 3 and that states:

> The control unit is designed such that these optimised delays are achieved with minimal effort through the calibration of increment and decrement keys provided on the keypad.

'202 Patent at col. 6:26-29; SGI ¶ 60. Figure 3 of the accompanying illustration depicts a "representation of different steps in establishing a blasting arrangement." '202 Patent at col. 3:40-41. According to Defendants, it is this language that describes the specific means for varying the delay periods.

Although Orica is correct that the '202 patent describes an interaction between the keypad and associated circuitry to achieve the desired delay time, *see* '202 Patent at 5:7-

---

[7] "FIG 2. is a block diagram representation of a control unit and memory module used in establishing the blasting arrangement . . ." '202 Patent at col. 3:37-39.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

12, the Court agrees with Defendants that the language at col. 6:26-29 is the only language that discloses the "means for *varying* the displayed time delay period . . ." '202 Patent at col. 8:59 (emphasis added). And thus it is the "increment and decrement keys" that are the means. "The corresponding structure to a function set forth in a means-plus-function limitation must actually perform the recited function, not merely enable the pertinent structure to operate as intended." *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001). While the keypad described in the '202 patent enables the operator to perform the function, it is through the increment/decrement keys that the claimed function is actually performed.

Thus, contrary to Orica's argument, the structure of the preferred embodiment is a keypad and the means for varying the displayed time delay period are its increment/decrement keys. As explained below, Dan Mar's Dash-100 AI logger does not include a structure that performs the identical function as the '202 patent's keypad with increment/decrement keys.

> **B.    The accused product does not include the functional equivalent of a keypad with increment/decrement keys**

"[I]n order to establish literal infringement of a means-plus-function claim, the patentee must establish that the accused device employs structure identical *or equivalent* to the structure disclosed in the patent and that the accused device performs the identical function specified in the claim." *WMS Gaming*, 184 F.3d at 1350 (emphasis added). *See also Applied Med. Res. Cop. v. U.S. Surgical Corp.*, 488 F.3d 1324, 1333 (Fed. Cir. 2006) ("infringement of a means-plus-function claim litigation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification"). "The proper test for determining whether the structure in an accused device is equivalent to the structure recited in a [means-plus-function] claim is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial." *Id*. at 1351. Thus, equivalence of structure can be shown here if the keys on the Dash-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

100 AI perform the identical function in substantially the same way to achieve substantially the same result as the increment/decrement keys described in the '202 patent.  *Id*. at 1333-34.  The Court concludes that they do not.

  In the preferred embodiment of the '202 patent, the blast operator can automatically increment the delay times from hole to hole as detonators are logged, by (1) programming the delay time into the logger, and (2) then, for successive detonators, the "control unit has an automatic increment, again calibrated by the user, to enable standard incremental delays to be allocated to the detonators without changing the primary absolute delay."  SUF ¶ 57; '202 Patent at 6:36-44.

  As Orica explains, in the '202 patent's preferred embodiment, the operator of the logger varies the delay times (*i.e.*, the amount of time that the detonator will wait, after receiving a "fire" command, before detonating) by going to each detonator, assigning a time delay period to that detonator, going to the next detonator and pressing an "increment/decrement" ("up/down") button to reach the next time delay interval and then pressing a key to accept the time delay period.  Orica's Opp'n at 6.  Like the '202 patent, Defendants admit that the Dash-100 AI logger "eliminates the need to type delay times for each detonator by allowing the blast site operator to automatically increase or decrease detonator delay times by a stored time as he travels from hole to hole."  Defendants' Motion at 21:13-17.  However, unlike what is required by and is a feature of the '202 patent, the Dash-100 AI logger cannot vary each detonator's displayed time period by more than one time delay interval.  The Dash-100 AI logger can change the displayed time period by one time interval on a given detonator through use of the enter key, but it cannot change the displayed time period by more than one interval on a given detonator.

  The following example is taken from pages 10 and 11 of Defendants' Motion for Summary Judgment.  It illustrates how a blast site operator could program a branch of ten detonators using a Dash-100 AI logger. However, for purposes of clarity, the Court has substituted the terms used in the '202 patent for the unfortunately imprecise headings in

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

Defendants' chart. Thus, the second column is labeled "Time Interval" (instead of "Time Increment") and the third column is labeled "Time Delay Period" (instead of "Delay Time").

| Detonator No. | Time Interval | Time Delay Period |
|---|---|---|
| 1 | 10 ms | 10 ms |
| 2 | 10 ms | 20 ms |
| 3 | 10 ms | 30 ms |
| 4 | 10 ms | 40 ms |
| 5 | 10 ms | 50 ms |
| 6 | 10 ms | 60 ms |
| 7 | 10 ms | 70 ms |
| 8 | 10 ms | 80 ms |
| 9 | 10 ms | 90 ms |
| 10 | 10 ms | 100 ms |

   The operator first sets a 10 millisecond time interval, and then begins programing the detonators. Each time the logger adds 10 ms to the time delay period of the previously connected detonator, the operator must press "enter" to accept that time delay period. SGI ¶ 61. In the example illustrated in the chart above, the first detonator has a time delay period of 10 ms. The operator would press the enter key to accept that time delay period, and then move to the second detonator. The Dash-100 AI automatically adds 10 ms to the time delay period of the previously connected detonator. Thus, once 10

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

ms were added to the time delay period of detonator one, the time delay period for detonator two becomes 20 ms. However, unlike in Orica's invention, the operator cannot vary the time delay period by more than one increment—he *must* accept the displayed time delay period while in auto-increment mode. For example, when the operator reaches detonator four and wishes to change the time delay period of detonator four by 20 ms to get to what then would be a time delay period of 50 ms, he cannot do so by pressing the "enter" key twice. Rather, the operator must exit the "auto-increment mode" and manually program the fourth detonator's time delay period to 50 ms. (*See* SGI ¶ 60.)

In contrast, the '202 patent enables the operator to vary the displayed delay time for a given detonator by more than one pre-set time interval. For example, assume the operator of a logger using the '202 patent sets a time interval of 10 ms, as illustrated in the chart above. The operator could then begin varying the displayed time periods of the detonators in 10 ms increments. Assume that when the operator reaches detonator four, he wishes to vary the time delay period by 20 ms to get to what then would be a time delay period of 50 ms. The operator using the '202 patent's logger could press the increment key twice to achieve this result. The operator could then (without exiting auto-increment mode) resume making the time delay period of succeeding detonators vary (once again) by 10 ms time increments, simply by pressing the increment key only once for each detonator.

The parties dispute whether this functionality (*i.e.,* the ability to vary a particular detonator's delay time by more than one time increment) is a requirement of the '202 patent. Although the parties did not focus on this requirement in their briefs, it was discussed at length at the court hearing on February 1, 2010. Defendants point out that the element in claim 14 that is disputed discloses not just a "means for varying the displayed time delay period," but a "means for varying the displayed time delay period *at least by steps with each step corresponding to the stored time interval,* thereby to achieve a desired time delay period." '202 Patent col. 8:59-61 (emphasis added). Defendants contend that the italicized language means that the logger must be able to vary the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

displayed time period for a given detonator by more than one time interval, which would enable the logger to have varying time intervals for various detonators. Orica disputes this, and argues that the "at least by steps" language in '202 patent refers to the logger's ability to vary the displayed time period from detonator to detonator.

The Court agrees with Defendants' reading of the language of claim 14. The patent reads in terms of a single detonator: it requires the control unit or logger to have the ability to vary "*the* displayed time period" at least by "*steps*, with each step corresponding to the stored time interval." '202 Patent col. 8:59-60 (emphasis added). The purpose of this function is to "achieve *a* desired time delay period." *Id.* at col. 8:61 (emphasis added). In other words, the logger must be able to perform more than one step for *each* detonator. That is precisely what the "means" in claim 14 entail. The parties agree that the enter key on the Dash-100 AI logger does not perform this function, as explained above. Although the use of the "enter" key on the keypad in the Dash-100 AI logger functions to "vary the displayed time period" by a stored time interval, it cannot vary the displayed time period "at least by steps, with each step corresponding to the stored time interval." In short, the Dash-100 AI logger lacks the "means" for performing a required function of the '202 patent.

The Court concludes that this difference between the Dash-100 AI logger and the '202 patent is not insubstantial. As disclosed in the '202 patent, *a* desired time delay period (*i.e.*, a time delay period for one specific detonator) can be achieved by varying the displayed time period "at least by steps," which as the Court notes above, refers to the ability to vary the displayed time period of a given detonator by more than one pre-set time interval. The Court therefore finds that Defendants have demonstrated that the Dash-100 AI logger does not directly infringe claim 14 of the '202 patent.

## V. CONCLUSION

In sum, the Court DENIES Plaintiff's Motion for Partial Summary Judgment as to Infringement that Defendants' Products Include Every Element of U.S. Patent No.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3337 AHM (CTx) | Date | February 5, 2010 |
|---|---|---|---|
| Title | ORICA EXPLOSIVES TECHNOLOGY PTY., LTD. v. AUSTIN POWDER COMPANY, *et al.* | | |

6,644,202[8] and GRANTS Defendants' Motion for Summary Judgment as to Non-Infringement of U.S. Patent No. 6,644,202.[9]

    This Order is not intended for publication or for inclusion in the databases of Westlaw or LEXIS.

:

Initials of Preparer     SMO

---

[8] Docket No. 128

[9] Docket No. 134